

**PRICE DANIEL**
ATTORNEY GENERAL

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

November 18, 1947

Hon. Jep S. Fuller
County Attorney
Jefferson County
Beaumont, Texas

ATTN: Mr. Joe S. Maida, Jr.

Opinion No. V-434

Re: The manner in which
payment may be made
to the City of Port
Arthur of certain
funds alleged to have
been erroneously paid
to the State

Dear Sir:

Your request for an opinion dated September 12, 1947, is as follows:

"You will recall my conversation with you recently regarding a request of the Attorney General for a ruling on the question whether or not the State Treasurer, the State Comptroller and/or the Tax Collector of Jefferson County has the authority to repay to the City of Port Arthur certain funds which have, through error, been paid to the State.

"I have particular reference to taxes remitted to the City of Port Arthur under authority of House Bill 410, Regular Session 49th Legislature, Ch. 353, P. 615 Vernons' Texas Session Laws. A recent Audit has disclosed that no taxes on intangibles have ever been remitted to the City, contrary to the Attorney General's Ruling (Opinion No. 0-7085, Feb. 9th, 1946) on file in your office. Also there have been numberous instances where taxes on real estate have not been remitted by reason of various types of errors. In all of these instances such taxes have been paid into the State Treasury.

"It is the City's contention that, since these taxes were granted to the City of Port Arthur under authority of the Above Legislative

Act to perform a State Function, that is,
the construction of Seawalls etc., there should
be required no further authority on behalf of
any State or County officials to pay the monies
as directed by the Legislature.

"We would very much appreciate your making
this request on behalf of the City.  I will fur-
nish any additional briefing that you might con-
sider proper."

We find it necessary to first examine Opinion
0-7085, dated February 9, 1946, to determine if it cor-
rectly states the law.  Your opinion request states:  "A
recent audit has disclosed that no taxes on intangibles
have been remitted to the city, contrary to the Attorney
General's ruling (Opinion 0-7085, February 9th, 1946) on
file in your office."

Our opinion has reference only to taxes assessed
and collected under the Intangible Tax Law, Chapter 4,
Title 122 (Arts. 7105-7116) V.C.S. and not to intangibles
that may be taxed outside the scope of Chapter 4, Title
122, such as debts, stocks, bonds, etc., which may have a
taxable situs within Precinct No. 2 as distinguished from
the County at large.

A careful study of this opinion and an examina-
tion of the authorities convinces us that it is erroneous
and must be overruled insofar as it applies to taxes as-
sessed and collected under the Intangible Tax Law, Chapter
4, Title 122 V.C.S.  The following authorities make it
quite clear that intangible taxes under the Intangible Tax
Law are apportioned to the county at large and may not be
apportioned to the respective political subdivisions of
the County, as here, to the City of Port Arthur or Commis-
sioner's Precinct No. 2 of Jefferson County.

In the case of State v. Pacific Railway Company,
62 S.W. 2d 81 (Sup. Ct.) we find this language:

"It is quite true, as contended by coun-
sel, that in the intangible tax law, it pro-
vided in effect. (Art. 7105) that intangible
assets may be taxed for state and county pur-
poses, and it is further true that no provision
in that law affords legislative authority for
the taxing of such assets for any other purpose
or for the benefit of any other public corpora-
tion or agency . . . . As regard to the value

of the rolling stock which, under the provisions
of Article VIII, Section 8 of the Constitution
and of Article 7169 of the statute, was appor-
tioned by the State Comptroller to El Paso Coun-
ty, the situs for taxation purposes became fixed
in that County. The reasons upon which this con-
clusion is based are substantially the same as
those upon which our conclusion respecting in-
tangible assets is based. In both instances the
situs becomes fixed in the county at large, but
not of course in any particular portion of the
county." (Emphasis added throughout this opin-
ion)

To the same effect is the case of Bell County v.
Hines, 219 S.W. 556 (Court of Civil Appeals, Writ of Error
denied), from which we quote as follows:

". . . Article 7414, Revised Statutes, pro-
vides that each railway company 'shall pay an an-
nual tax to the state . . . on their intangible
assets, . . . and local taxes thereon to the coun-
ties in which its business is carried on.' Other
provisions of the statute provide for apportioning
intangible assets to the counties, and how the same
shall be listed on the tax rolls of the county. In
this wise, the statute makes the pro rata of intan-
gible assets allotted to a county taxable assets of
such county, or, in other words, the property of such
county for the purpose of taxation. The statute does
not so provide with reference to road districts, nor
as to any other district. Hence such intangible as-
sets are the property of the county for the purposes
of taxation, but are not the property of a road or
other district for any purpose."

Section 1, House Bill 410, passed by the Regular
Session of the 49th Legislature Ch. 353, p. 615 of Vernon's
Texas Session Laws is as follows:

"That commencing with the fiscal year begin-
ning September 1, 1929, and ending August 31, 1961,
there be and hereby are donated and granted by the
State of Texas to the City of Port Arthur, Texas,
situated in Jefferson County, Texas, eight-ninths
(8/9th) of the net amount of the State ad valorem
taxes collected on all property, both real and
personal in Commissioners' Precinct No. 2 of Jef-
ferson County, Texas, as it existed on January 1,
1945."

Under the express terms of this bill the donation of eight-ninths (8/9th) of the State taxes is "on all property both real and personal in Commissioners' Precinct No. 2 of Jefferson County, as existed on January 1, 1945."

Under the construction of the intangible tax law applied in the foregoing authorities, intangible assets do not constitute property in Commissioners' Precinct No. 2 of Jefferson County within the purview of said H. B. 410. It, therefore, follows that no part of the intangible taxes levied, assessed and apportioned to Jefferson County under the Intangible Tax Law are donated to said district as Opinion O-7085 erroneously holds; to this extent it is expressly overruled.

This leaves only the question embraced in the following part of your opinion request: "Also there have been numerous instances where taxes on real estate have not been remitted by reason of various types of errors. In all of these instances such taxes have been paid into the State Treasury".

You state that such taxes have been paid into the State Treasury. The question arises, may they be withdrawn or paid out by the Treasury without a specific appropriation by the Legislature? We think Section 6 of Article VIII of the Constitution compels a negative answer. This article and section of the Constitution provides in part:

"No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law."

In the case of Manion vs. Lockhart, 114 S.W. 2d 216, (Sup. Ct.), there, as here, the money was erroneously paid into the General Fund. In discussing the question the Court said:

"It is shown that respondent, acting on the opinion rendered by the Attorney General, deposited this money in the general revenue fund of the State. Respondent has in no manner profited by such action on his part. He acted in good faith in depositing such money in the general revenue fund, which now requires that it be appropriated by the Legislature in accordance with the provisions of Section 6 of Article VIII, of the Constitution. Respondent does not now have in his possession such funds,

and, therefore, he is unable, without an act of the legislature, to pay same to those entitled thereto. . . . It is undisputed that relator has fully complied with the law and is entitled to be paid the sum of money claimed by him. It is not shown, however, that relator cannot obtain the money due him by another complete and adequate remedy. While it is true the money due relator has been placed in the general revenue fund, the legislature has not refused to make a specific appropriation to pay relator's demands therefor."

You are, therefore, respectfully advised that no part of the intangible tax collected in Jefferson County may be apportioned to the City of Port Arthur or Commissioners' Precinct No. 2 of said County under said House Bill 410 of the 49th Legislature. Nor may such taxes donated by said bill on property having a physical situs in said district, but erroneously paid into the State Treasury to the credit of the General Revenue Fund, be refunded to the district except by specific appropriation by the Legislature.

## SUMMARY

No part of the intangible taxes collected by Jefferson County upon intangible assets, as provided in the Intangible Tax Law, may be apportioned to the City of Port Arthur or Commissioners' Precinct No. 2 of said County under House Bill 410 of the 49th Legislature. Taxes therein donated arise only from property having a situs in the district. Intangible taxes are apportioned to the county at large but not to any district of said county. Bell County v. Hines 219 S.W. 556, State v. Pacific Railway Company, 62 S.W. 2d 81 (Sup. Ct.).

If taxes collected upon either real or personal property located in the district have erroneously been paid into the State Treasury and credited to the General Fund, they may be refunded to the district only by specific appropriation made by the Legislature. Section

6 of Article VIII, Constitution of Texas;
Manion vs. Lockhart, 114 S.W. 2d 216, (Sup.
Ct.)

Yours very truly

ATTORNEY GENERAL OF TEXAS

By                     L. P. Lollar
                          Assistant

LPL/lh

APPROVED:

FIRST ASSISTANT
ATTORNEY GENERAL.